UNITED STATES OF AMERICA

IN DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CANDISS CHAMBERS,

      Plaintiff,

                                                   Case No. 22-10780

-v-

ALYSA KOWALSKY and MAVEN
PROPERTIES, LLC, Jointly and
Severally,

      Defendants.
_____/

JOEY S. NISKAR (P55480)
The Niskar Law Firm, PLLC
Attorney for Plaintiff
P.O. Box 252917
West Bloomfield, MI  48325
(248) 702-6262
E-mail: joey@wrongfullydischarged.com

_____/

## Complaint and Demand for Jury Trial

NOW COMES the plaintiff, Candiss Chambers, by and through her counsel, The Niskar Law Firm, PLLC, and in support of her complaint against the defendants, jointly and severally, hereby states as follows:

-1-

## A. Statement of Jurisdiction and Venue

1. Plaintiff, Candiss Chambers, is a resident of the City of Detroit, County of Wayne, State of Michigan.

2. Defendant, Alysa Kowalsky (hereafter "Kowalsky"), is a resident of the Township of West Bloomfield, County of Oakland, State of Michigan.

3. Defendant, Maven Properties, LLC (hereafter "Maven") is a Michigan limited liability company with its principal place of business located in the City of Novi, County of Oakland, State of Michigan, and which conducts regular and ongoing business in the Counties of Wayne and Oakland in the State of Michigan.

4. As the defendants reside in and/or conduct regular and ongoing business in the Counties of Oakland and Wayne in the State of Michigan, this Honorable Court possesses personal jurisdiction over the defendants and venue is proper pursuant to 28 USC § 1391.

5. Plaintiff alleges violations 42 USC § 1981. Therefore, this Honorable Court possesses original subject matter jurisdiction pursuant to 28 USC § 1331 and 28 USC § 1343(4).

6. This Honorable Court possesses supplemental jurisdiction over plaintiff's state law claims pursuant to 28 USC § 1367.

## B. Non-Exhaustive Factual Allegations

Plaintiff incorporates all prior averments, as if fully set forth herein.

7. Plaintiff is of the African-American race.

8. Defendant Kowalsky is white.

9. Defendant Kowalsky is and was at all pertinent times an owner and Chief Executive Officer of defendant Maven.

10. Defendant Maven is a property leasing and management company which, *inter alia*, owns, leases and manages the leasing of single-family homes, townhouses, condominiums, duplex homes, multi-family homes, and commercial properties, as well as housing units under Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f.

11. On or about September 13, 2021, plaintiff began working for Maven as a Housing Coordinator.

12. On or about September 20, 2021, in the work place and in the presence of plaintiff and one or more other African-Amercan workers, defendant Kowalsky uttered the phrase "nigger lover."

13. Plaintiff and the other African-American worker(s) were understandably and deeply offended by defendant Kowalsky's utterance of the racial slur "nigger."

14. Plaintiff and the other African-American worker(s) expressed to defendant Kowalsky their offense at her use of the racial slur "nigger," objected to

Kowalsky's use of the term, and asked Kowalsky to not use the term in their presence. Defendant Kowalsky promised to not use the term again in the presence of plaintiff and the other African-American worker(s).

15. On or about November 18, 2021, in the presence of plaintiff and one or more other African-American workers, defendant Kowalsky referred to African-American squatters with whom she had an altercation earlier that day as "niggers."

16. Plaintiff and the other African-American worker were understandably and deeply offended by defendant Kowalsky's continuing use of the racial slur "nigger."

17. Plaintiff was so deeply offended by defendant Kowalsky's second known utterance of the term "nigger" that she reasonably and subjectively felt compelled to leave work for the day.

18. On or about November 19, 2021, plaintiff and another African-American worker met and spoke with defendant Kowalsky about the latter's repeated use of the racial slur "nigger" in their presence and in the workplace, again objected to Kowalsky's use of the term, and requested that Kowalsky stop using the term in their presence.

19. Defendant Kowalsky disingenuously claimed to not know that the racial slur was so offensive to African-Americans, and again promised to not use the slur again in the workplace.

20. Plaintiff was from an emotional standpoint adversely affected by defendant Kowalsky's use of the racial slur in her presence, as were two other African-American workers.

21. Around the week before Thanksgiving of 2021, defendant Kowalsky initiated a meeting with plaintiff and two other African-American workers regarding their demeanor toward Kowalsky.  Plaintiff stated that she and the other African-American workers were still affected by and upset over Kowalsky's repeated use of the racial slur.  Defendant Kowalsky responded by stating that she refused to "walk on eggshells" in the workplace, stated that she had previously apologized, and told the African-American workers that they had to either get over the issue or find another job.

22. On or about December 2, 2021, plaintiff complained to Maven co-founder, Jason Strayhorn about defendant Kowalsky's repeated use of the racial slur.  Mr. Strayhorn.  Mr. Strayhorn indicated that he would talk to Kowalsky about the matter.

23. On or about January 10, 2022, plaintiff and one or more other African-American workers were in the Maven office when defendant Kowalsky was also present.  In the presence of plaintiff and the other African-American workers, defendant Kowalsky referred to an African-American painting contractor as "that old nigga painter."

24. The word "nigga" is a slight variation in the pronunciation of the word

"nigger." Use of the term "nigga" by a white person is equally offensive to African-Americans as use of the term "nigger."

25. Plaintiff was so deeply offended by defendant Kowalsky's third known utterance of the racial slur in her presence that she reasonably and subjectively again felt compelled to leave work for the day.

26. On or about January 11, 2022, plaintiff returned to the workplace. Defendant Kowalsky ordered plaintiff into her office, at which point plaintiff strongly objected to Kowalsky's continued and repeated use of the term "nigger" or the equivalent term "nigga" in the workplace.

27. Defendant Kowalsky then notified plaintiff she was "fired" and terminated plaintiff's relationship with Maven because of her objections to Kowalsky's continued use of the aforementioned racial slurs.

28. On March 26, 2022, counsel for plaintiff e-mailed a letter to defendant Kowalsky notifying the latter of counsel's representation of plaintiff, and requesting access to plaintiff's personnel file pursuant to the Michigan Bullard-Plawecki Employee Right to Know Act, MCL § 423.501 *et seq*.

29. That same day, March 26, 2022, defendant Kowalsky responded to plaintiff's counsel's letter of that date by stating that she was out of the country, and would respond upon her return.

30. In response to receiving plaintiff's counsel's March 26, 2022 letter, defendants contacted the Farmington Hills, Michigan, police department

and falsely accused plaintiff of stealing the work files of multiple employees, including plaintiff's own file.

31. Defendants' report to the Farmington Hills police was false, was made with no proof to support their accusation of theft against plaintiff, and was made in retaliation for plaintiff engaging in legally-protected activity including but not limited to retaining counsel to pursue race discrimination claims, objecting to race discrimination and/or participating in proceedings brought under federal and state anti-discrimination laws.

32. On April 10, 2022, an attorney, F. Anthony Lubkin, e-mailed a letter to plaintiff's counsel on behalf of defendant Kowalsky which was dated April 6, 2022.  In the letter, Mr. Lubkin attempted to defend, justify and excuse one of defendant Kowalsky's uses of the above-referenced racial slur, despite the fact that plaintiff's counsel's March 26, 2022 letter did not disclose the nature of any claims plaintiff intended to pursue (if any).  This demonstrates that as of the time defendants received plaintiff's counsel's letter on March 26, 2022 they subjectively believed and understood that plaintiff retained counsel for the purpose of pursuing one or more race discrimination claims against them.

33. In his letter dated April 6, 2022, Mr. Lubkin, on behalf of defendant Kowalsky, falsely accused plaintiff of stealing the work files for multiple Maven workers, including that of plaintiff herself.  Mr. Lubkin sent a "cc"

copy of his letter to the Farmington Hills police department.

34. In his letter dated April 6, 2022, Mr. Lubkin on behalf of defendant Kowalsky likewise explicitly threatened to file counter-claims against plaintiff if she pursued her race discrimination claims against Kowalsky and/or Maven.

35. Defendant Kowalsky's threat to file counter-claims against plaintiff if plaintiff pursued a race discrimination lawsuit against Kowalsky and/or Maven, made through Mr. Lubkin, and any subsequent filing of such counter-claims, each constitute unlawful retaliation in violation of federal and state anti-discrimination laws.

36. Defendants subjected plaintiff to severe and/or pervasive harassment on the basis of race which had the purpose and/or effect of unreasonably interfering with her work performance and/or created an intimidating, hostile or offensive working environment (hereafter "racial harassment").

37. The racial harassment included, but was not limited to multiple and repeated uses of the racial slur "nigger" and "nigga" in the presence of plaintiff and other African-American workers.

38. Plaintiff and other African-American workers of Maven repeatedly requested that defendant Kowalsky stop her use of the racial slurs, but to no avail.

39. Defendants had actual and/or constructive notice of the racial harassment.

40. Defendants failed to take prompt and reasonable measures to investigate and/or stop the racial harassment.

### C. Count I – Violations of The Civil Rights Act of 1866, 42 USC § 1981 – Race Discrimination; Racial Harassment; Hostile Work Environment; Retaliation; and Alternatively Constructive Discharge

Plaintiff incorporates all prior averments, as if fully set forth herein.

41. The plaintiff is a "person" within the meaning and contemplation of the Civil Rights Act of 1866, specifically 42 USC § 1981(a).

42. Defendants were each, separately and collectively, subject to the prohibitions against discrimination on the basis of race, and retaliation, proscribed by 42 USC § 1981.

43 Defendants violated 42 USC § 1981, including but not limited to the following ways;

    a. Unlawfully subjecting plaintiff to a hostile work environment on the basis of race discrimination and/or racial harassment;
    b. Unlawfully terminating plaintiff due to her race;
    c. Unlawfully terminating plaintiff in retaliation for plaintiff objecting to race discrimination and/or racial harassment;
    d. Unlawfully submitting a police report falsely accusing plaintiff of theft in retaliation for plaintiff engaging in activity protected by 42 USC § 1981, including but not limited to retaining counsel to pursue legal claims for race discrimination and/or racial harassment against defendants;
    e. Unlawfully threatening to file counter-claims against plaintiff in retaliation for plaintiff engaging in activity protected by 42 USC § 1981, including but not limited to retaining counsel to pursue legal claims for race discrimination and/or racial harassment and/or pursuing race discrimination and/or racial harassment claims against defendants;

  f. If filed, unlawfully asserting false counter-claims against plaintiff in retaliation for plaintiff objecting to race discrimination and/or racial harassment, and/or for pursuing legal claims for race discrimination and/or racial harassment against defendants;

  g. Unlawfully retaliating against plaintiff for participating in proceedings protected by 42 USC § 1981.

  h. Failing to adopt and properly implement an adequate race discrimination and/or racial harassment policy;

  i. Failing to adequately train its officers, members and employees on proper race discrimination and racial harassment policies;

  j. Failing to timely and adequately respond to the plaintiff's complaints, and any complaints by others, of race discrimination and/or racial harassment;

  k. Allowing defendant Kowalsky to continue racially harassing plaintiff after plaintiff and/or others made timely and adequate efforts to report and stop the same;

  l. Denying plaintiff the full rights to make and enforce contracts, as defined and contemplated by 42 USC § 1981(b), due to race;

  m. Denying plaintiff the full enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship due to race;

  n. In the event the trier of fact determines that defendants did not terminate plaintiff's work relationship, then in the alternative, forcing plaintiff to quit, thereby causing a constructive discharge.

44. Defendants' violation(s) of 42 USC § 1981 were done with malice and/or reckless indifference to the plaintiff's rights, thereby subjecting the defendants to punitive damages, in addition to all other damages available at law.

45. As a direct and proximate result of the defendants' violations of 42 USC § 1981, plaintiff has incurred all damages available at law, both past, present and into the future, including but not limited to lost wages, lost overtime wages, the value of lost employment benefits, loss of other compensation denied and lost, consequential damages, non-economic damages including

emotional distress and/or mental anguish damages, any incurred medical expenses, punitive damages, interest, costs of litigation, and attorney fees. Plaintiff hereby seeks recovery of, and is entitled to recovery of, all such damages incurred, and those that will be incurred in the future (including front-pay).

46. In the event the Court deems reinstatement to be a remedy more appropriate than front-pay for future damages, then plaintiff, in the alternative, hereby seeks an injunctive order compelling defendants to reinstate plaintiff to her former position, compelling defendants to retroactively restore plaintiff's seniority rights and/or opportunities for promotion, declaring that the defendants violated 42 USC § 1981 in the aforementioned ways, enjoining defendants from further violations of 42 USC § 1981 against plaintiff and others, enjoining defendants from taking any adverse employment action against plaintiff in retaliation for exercising her rights under 42 USC § 1981, and enjoining defendants from taking any adverse employment action against plaintiff except upon a showing of just and good cause by clear and convincing evidence. Even if the Court orders such reinstatement, plaintiff nevertheless is entitled to recover, and hereby seeks recovery of all other damages listed in this complaint, including back-pay, non-economic damages, the value of lost benefits, consequential damages, the costs of any medical care, attorney fees, punitive damages, costs, interest, etc.

## D.  Count II – Violations of the Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.*; MSA § 3.548(101), *et seq.* – Race Discrimination; Racial Harassment; Hostile Work Environment; Retaliation; and Alternatively Constructive Discharge

Plaintiff incorporates all prior averments, as if fully set forth herein.

47.   Plaintiff was an "employee" and/or "individual" within the meaning of Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq*; MSA § 3.548(101), *et seq*. (herein referred to as the "ELCRA").

48.   Defendants were each, individually and/or collectively, an employer of plaintiff within the meaning and contemplation of the ELCRA.

49.   Defendants violated the ELCRA, including but not limited to the following ways;

   a.   Unlawfully subjecting plaintiff to a hostile work environment on the basis of race discrimination and/or racial harassment;
   b.   Unlawfully terminating plaintiff due to her race;
   c.   Unlawfully terminating plaintiff in retaliation for plaintiff objecting to race discrimination and/or racial harassment;
   d.   Unlawfully submitting a police report falsely accusing plaintiff of theft in retaliation for plaintiff engaging in activity protected by the ELCRA, including but not limited to retaining counsel to pursue legal claims for race discrimination and/or racial harassment against defendants;
   e.   Unlawfully threatening to file counter-claims against plaintiff in retaliation for plaintiff engaging in activity protected by the ELCRA, including but not limited to retaining counsel to pursue legal claims for race discrimination and/or racial harassment and/or pursuing race discrimination and/or racial harassment claims against defendants;
   f.   If filed, unlawfully asserting false counter-claims against plaintiff in retaliation for plaintiff objecting to race discrimination and/or racial harassment, and/or for pursuing legal claims for race discrimination and/or racial harassment against defendants;

    g. Unlawfully retaliating against plaintiff for participating in proceedings protected by the ELCRA.
    h. Failing to adopt and properly implement an adequate race discrimination and/or racial harassment policy;
    i. Failing to adequately train its officers, members and employees on proper race discrimination and racial harassment policies;
    j. Failing to timely and adequately respond to the plaintiff's complaints, and any complaints by others, of race discrimination and/or racial harassment;
    k. Allowing defendant Kowalsky to continue racially harassing plaintiff after plaintiff and/or others made timely and adequate efforts to report and stop the same;
    l. Denying plaintiff the full rights to make and enforce contracts, as defined and contemplated by the ELCRA, due to race;
    m. Denying plaintiff the full enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship due to race;
    n. In the event the trier of fact determines that defendants did not terminate plaintiff's work relationship, then in the alternative, forcing plaintiff to quit, thereby causing a constructive discharge.

50. Defendants' violation(s) of the ELCRA were done with malice and/or reckless indifference to the plaintiff's rights, thereby subjecting the defendants to exemplary damages, in addition to all other damages available at law.

51. As a direct and proximate result of the defendants' violations of the ELCRA, plaintiff has incurred all damages available at law, both past, present and into the future, including but not limited to lost wages, lost overtime wages, the value of lost employment benefits, loss of other compensation denied and lost, consequential damages, non-economic damages including emotional distress and/or mental anguish damages, any incurred medical expenses, exemplary damages, interest, costs of litigation,

and attorney fees. Plaintiff hereby seeks recovery of, and is entitled to recovery of, all such damages incurred, and those that will be incurred in the future (including front-pay).

52. In the event the Court deems reinstatement to be a remedy more appropriate than front-pay for future damages, then plaintiff, in the alternative, hereby seeks an injunctive order compelling defendants to reinstate plaintiff to her former position, compelling defendants to retroactively restore plaintiff's seniority rights and/or opportunities for promotion, declaring that the defendants violated the ELCRA in the aforementioned ways, enjoining defendants from further violations of the ELCRA against plaintiff and others, enjoining defendants from taking any adverse employment action against plaintiff in retaliation for exercising her rights under the ELCRA, and enjoining defendants from taking any adverse employment action against plaintiff except upon a showing of just and good cause by clear and convincing evidence. Even if the Court orders such reinstatement, plaintiff nevertheless is entitled to recover, and hereby seeks recovery of all other damages listed in this complaint, including back-pay, non-economic damages, the value of lost benefits, consequential damages, the costs of any medical care, attorney fees, exemplary damages, costs, interest, etc.

WHEREFORE the plaintiff respectfully prays for judgment against the defendants, jointly and severally, for all compensatory damages (non-economic and economic), punitive damages, exemplary damages, and all other damages available at law, together with costs, interest and attorney fees incurred in having to investigate, pursue, litigate and prosecute the instant action.

    Respectfully submitted,

    THE NISKAR LAW FIRM, PLLC

    By: /s/ Joey S. Niskar
    JOEY S. NISKAR (P55480)
    Attorney for Plaintiff
    P.O. Box 252917
    West Bloomfield, MI 48325
    (248) 702-6262

Dated: April 12, 2022    E-mail: joey@wrongfullydischarged.com

UNITED STATES OF AMERICA

IN DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CANDISS CHAMBERS,

        Plaintiff,

                                                                Case No. 22-10780

-v-

ALYSA KOWALSKY and MAVEN
PROPERTIES, LLC, Jointly and
Severally,

        Defendants.
_____/

JOEY S. NISKAR (P55480)
The Niskar Law Firm, PLLC
Attorney for Plaintiff
P.O. Box 252917
West Bloomfield, MI  48325
(248) 702-6262
E-mail: joey@wrongfullydischarged.com

        _____/

## **DEMAND FOR JURY TRIAL**

      NOW COMES the plaintiff, Candiss Chambers, by and through her attorneys, The Niskar Law Firm, PLLC, and hereby demands a trial by jury on all issues in this case.

        Respectfully submitted,

        THE NISKAR LAW FIRM, PLLC

        By: /s/ Joey S. Niskar
        JOEY S. NISKAR (P55480)
        Attorney for Plaintiff
        P.O. Box 252917
        West Bloomfield, MI  48325
        (248) 702-6262

Dated:  April 12, 2022        E-mail:  joey@wrongfullydischarged.com